# EXHIBIT A

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Serena Murillo

Electronically FILED by Superior Court of California, County of Los Angeles on 11/10/2021 06:20 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

Azar Mouzari, Esq. (STATE BAR NO. 263461)
**BEVERLY HILLS TRIAL ATTORNEYS,**
**P.C.** 468 N. Camden Drive, Suite 238
Beverly Hills, California 90210
Telephone:     310-858-5567
Facsimile:     424-286-0963
Email: azar@bhtrialattorneys.com

Attorneys for Plaintiff, MARINA GOLDEN

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| MARINA GOLDEN, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>SANOFI-AVENTIS U.S., LLC, a Delaware Corporation; BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware Corporation; GLAXOSMITHKLINE, LLC, a Delaware Limited Liability Company; PFIZER, INC., a Delaware Corporation; CVS PHARMACY, INC., a Delaware Corporation; THE KROGER CO., an Ohio Corporation; WALGREEN CO., an Illinois Corporation; WALMART INC., an Arkansas Corporation; ALBERTSONS COMPANIES, INC., a Delaware Corporation; RITE AID CORPORATION, a Pennsylvania Corporation; AXMINSTER MEDICAL GROUP, INC., a California Corporation, and DOES 1-10, inclusive.<br><br>        Defendants. | CASE NO. 21STCV41533<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1
**COMPLAINT**

1

## Table of Contents

I.  INTRODUCTION ........................................................................................ 4

II.  PARTIES ................................................................................................. 4

    A.  Plaintiff ......................................................................................... 4

    B.  Manufacturer Defendants ............................................................. 5

        1.  Defendant Sanofi ................................................................. 5

        2.  Defendant Boehringer ......................................................... 6

        3.  Defendant GSK .................................................................... 7

        4.  Defendant Pfizer .................................................................. 8

    C.  Retailer Defendants ...................................................................... 8

        1.  CVS ..................................................................................... 8

        2.  Kroger ................................................................................. 9

        3.  Walgreens .......................................................................... 10

        4.  Walmart ............................................................................. 10

        5.  Albertson's ........................................................................ 10

        6.  Rite Aid ............................................................................. 10

    D.  Axminster Medical Group, Inc. ................................................. 11

III.  JURISDICTION AND VENUE ............................................................. 12

IV.  FACTUAL BACKGROUND ................................................................. 12

    A.  Brief History of Ranitidine and Zantac .................................... 12

    B.  The FDA Recall .......................................................................... 14

    C.  The Dangers of NDMA .............................................................. 14

    D.  How Ranitidine Transforms into NDMA Within the Human Body ................. 15

        1.  NDMA Forms in The Human Stomach ............................ 15

        2.  Formation of NDMA in the Other Organs of Human Body ................. 19

        3.  Formation of NDMA by Exposure to Heat and/or Time ................. 20

        4.  Ranitidine Exposure Is Directly Linked to Cancer ................. 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

  E. Defendants Knew or Should Have Known of the NDMA Risk ............................ 21

  F. Equitable Tolling ............................................................................. 24

V. CAUSES OF ACTION ............................................................................. 25

 STRICT LIABILITY – DESIGN DEFECT ............................................. 25

 STRICT LIABILITY – FAILURE TO WARN ........................................ 25

 NEGLIGENT MISREPRESENTATION ................................................ 26

 FRAUDULENT CONCEALMENT ........................................................ 27

 NEGLIGENCE – MANUFACTURE ...................................................... 28

 NEGLIGENCE - OTHERS ...................................................................... 30

PUNITIVE DAMAGES ................................................................................. 32

PRAYER FOR RELIEF ............................................................................... 33

DEMAND FOR JURY TRIAL .................................................................... 33

Plaintiff, Ms. Marina Golden ("Plaintiff"), alleges the following based on information and belief:

## I.     INTRODUCTION

1.      This case concerns personal injuries suffered by Plaintiff as a result of ranitidine, the active ingredient in Zantac ("Ranitidine-Containing Drugs"), which had been used to treat heartburn, upset stomach and ulcers since the early 1980's until April 1, 2020 when the U.S. Food and Drug Administration ("FDA") recalled all Ranitidine-Containing Drugs based on scientific evidence of a contaminant known as N-Nitrosodimethylamine (or "NDMA"), a human carcinogen, in the Ranitidine-Containing Drugs.

2.      Plaintiff has been diagnosed with breast cancer because of ingesting carcinogenic Ranitidine-Containing Drugs due to Defendants' willful misconduct and gross dereliction of duty.

3.      Had she known that Ranitidine-Containing Drugs would wreak such havoc to her body, Plaintiff would not have purchased or ingested any Ranitidine-Containing Drug.

4.      Plaintiff seeks redress to compensate her for her injuries and to strongly deter the type of misconduct that caused to the damages she has and will continue to suffer.

## II.    PARTIES

### A.     Plaintiff

5.      Plaintiff is a citizen of California and has resided in Los Angeles County, California at all relevant times.

6.      Plaintiff consumed over-the-counter Zantac (150 mg) from approximately the mid-1980's through 2017 to treat upset stomach and acid reflex on an as-needed basis.  More specifically, from 2014 – 2017, Plaintiff consumed over-the-counter Zantac (150 mg) to treat severe stomach issues during her cancer chemotherapy treatments.

7.      Plaintiff purchased her Ranitidine-Containing Drugs from various retailers in and around Los Angeles County, California, including Albertson's, CVS Pharmacy, Rite Aid, Kroger, Walmart, and Walgreens.

8.      As a direct and proximate result of ingesting carcinogenic Ranitidine-Containing

1  Drugs due to Defendants' willful misconduct and gross dereliction of duty, Plaintiff was diagnosed

2  with breast cancer in 2014.

3      9.    Plaintiff would not have purchased, nor ingested Ranitidine-Containing Drugs had

4  she known of the hazards associated with the human consumption of Ranitidine-Containing Drugs.

5      10.   Plaintiff is informed and believes that as a direct and proximate result of Plaintiff's

6  ingestion and/or exposure to Ranitidine-Containing Drugs distributed and supplied by Defendants,

7  Plaintiff experienced conscious pain and suffering and bodily impairment, including, but not limited

8  to breast cancer.  To address the adverse physical effects and damage from Plaintiff's exposure to

9  Ranitidine-Containing Drugs, Plaintiff required hospitalizations, in-patient surgeries, and other

10 medical treatment.

11     11.   Plaintiff suffered special damages including, but not limited to, medical expenses

12 and loss of earnings.  Additionally, Plaintiff suffered general damages including, but not limited to,

13 pain and suffering, mental anguish, and loss of enjoyment of life.

14     **B.    Manufacturer Defendants**

15     12.   Defendants are collectively composed of entities that designed, manufactured, tested,

16 marketed, labeled, packaged, handled, distributed, stored, and/or sold Ranitidine-Containing Drugs

17 under the brand name Zantac.  Defendants sold or otherwise made available ranitidine in the following

18 forms: injection, syrup, granules, tablets and/or capsules.

19     13.   Each defendant below regularly conducts business in the state of California, and its

20 Ranitidine-Containing Drugs have been placed in the stream of commerce to be sold in California

21 retail locations, including those located in Los Angeles.

22     14.   Plaintiff ingested and/or was exposed to Ranitidine-Containing Drugs under the

23 brand name Zantac from each of the manufacturers identified below.

24          **1.    Defendant Sanofi**

25     15.   Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company with its

26 principal place of business located at 55 Corporate Drive, Bridgewater, New Jersey 08807. Sanofi-

27 Aventis U.S. LLC's sole member is Sanofi U.S. Services, Inc., a Delaware corporation with its

28

principal place of business in New Jersey.  Sanofi-Aventis U.S. LLC is a citizen of Delaware and New Jersey.

16.    Sanofi US Services Inc. is a Delaware corporation with its principal place of business located at 55 Corporate Drive, Bridgewater, New Jersey 08807.  Sanofi US Services Inc. is a citizen of Delaware and New Jersey.

17.    Sanofi S.A. is a corporation formed and existing under the laws of France, having a principal place of business at 54 Rue La Boetie, 8th Arrondissement, Paris, France 75008.  Sanofi S.A. is a citizen of France.

18.    Sanofi-Aventis U.S. LLC and Sanofi US Services Inc. are subsidiaries of Sanofi S.A.

19.   Chattem, Inc. is a Tennessee corporation with its principal place of business located at 1715 West 38th Street Chattanooga, Tennessee 37409.  Chattem is a citizen of Tennessee.  Chattem is a wholly owned subsidiary of French corporation Sanofi S.A.

### 2.    Defendant Boehringer

20.    Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877. Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is a citizen of Delaware and Connecticut.

21.    Boehringer Ingelheim Corporation is a Nevada corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877. Defendant Boehringer Ingelheim Corporation is a citizen of Nevada and Connecticut.

22.    Boehringer Ingelheim USA Corporation is a Delaware corporation with its principal place of business located at 900 Ridgebury Rd., Ridgebury, Connecticut 06877. Boehringer Ingelheim USA Corporation is a citizen of Delaware and Connecticut.

23.    Boehringer Ingelheim International GmbH is a limited liability company formed and existing under the laws of Germany, having a principal place of business at Binger Strasse 173, 55216 Ingelheim AM Rhein, Rheinland-Phalz, Germany.  Boehringer Ingelheim International GmbH is a citizen of Germany.

1       24.     Boehringer Ingelheim Pharmaceuticals, Inc. is a direct or indirect subsidiary of Boehringer Ingelheim Corporation and Boehringer Ingelheim USA Corporation, which are wholly owned, directly, or indirectly, by Boehringer Ingelheim International GmbH. Collectively, these entities shall be referred to as "Boehringer Ingelheim."

25.     Boehringer Ingelheim Promeco, S.A. de C.V. is a foreign corporation organized and existing under the laws of Mexico with its principal place of business located at Maiz No. 49, Barrio Xaltocan, Xochimilco, Ciudad de Mexico, 16090 Mexico. Boehringer Ingelheim Promeco, S.A. de C.V. is a citizen of Mexico.

### 3.    Defendant GSK

26.     Defendant GlaxoSmithKline LLC, a Delaware limited liability company, has its principal place of business at Five Crescent Drive, Philadelphia, Pennsylvania, 19112. GlaxoSmithKline LLC's sole member is GlaxoSmithKline (America) Inc., a Delaware corporation with its principal place of business in that state. GlaxoSmithKline LLC is a citizen of Delaware.

27.     Defendant GlaxoSmithKline (America) Inc. is a Delaware corporation with its principal place of business located at 1105 N. Market Street, Suite 622, Wilmington, Delaware 19801. Defendant GlaxoSmithKline (America) Inc. is a citizen of Delaware.

28.     GlaxoSmithKline plc is a public limited company formed and existing under the laws of the United Kingdom, having a principal place of business at 980 Great West Road, Brentford Middlesex XO, TW8 9GS, United Kingdom. GlaxoSmithKline plc is a citizen of the United Kingdom.

29.     GlaxoSmithKline LLC and GlaxoSmithKline (America) Inc. are subsidiaries of GlaxoSmithKline plc.

30.     Ranitidine's origins trace to Allen & Hanbury's Ltd., who was awarded a patent that covered the ranitidine molecule from the U.S. Patent and Trademark Office in December 1978. Allen & Hanbury, Ltd. was a subsidiary of Glaxo Labs, Ltd. during this period. The FDA granted approval to Glaxo Holdings, Ltd. in 1983 to sell Zantac to the United States.

1

> ### 4. Defendant Pfizer

2

31.   Defendant Pfizer Inc.  ("Pfizer") is a Delaware corporation with its principal place

3  of business located at 235 East 42nd Street, New York, New York 10017.  Pfizer is a citizen of

4  Delaware and New York.

5

> ## C. Retailers Defendants

6

> ### 1. CVS

7

8  32.   Defendant CVS Pharmacy, Inc. ("CVS") is a Delaware corporation with its principal

9  places of business located at One CVS Drive, Woonsocket, Rhode Island 02895. Defendant CVS is

10  a citizen of Delaware and Rhode Island.

11  33.   In 2015, CVS Health Corporation acquired Target Corporation's pharmacies and

12  clinics. CVS defined herein includes any current or former Target Corporation pharmacy.

13  34.   On November 28, 2018, CVS Health completed the acquisition of Aetna.

14

15  35.   CVS/pharmacy acquired Longs Drugs Stores Corporation in 2008.  Longs Drug

16  Stores Corporation was incorporated in Maryland on May 24, 1985 as successor to Longs Stores.

17  Longs Stores was incorporated in 1946 in California, and its principal place of business was 141

18  North Civic Drive, Walnut Creek, California 94596.

19  36. Longs Drugs Stores Corporation's principal subsidiaries were Longs Drugs Stores

20  California, Inc. and RXAmerica, LLC.

21  37. RXAmerica, LLC provides pharmacy benefit management services.  CVS acquired

22  RxAmerica, LLC on October 20, 2008.

23

24  38. At all relevant times, Plaintiff regularly purchased and ingested Ranitidine-Containing

25  Drugs from CVS and Longs Drugs Stores locations in California, including stores in Los Angeles.

26  //

27  //

28

### 2.    Kroger

39.    Defendant the Kroger Co. is an Ohio corporation with its principal place of business located at 1014 Vine Street, Cincinnati, Ohio 45202. The Kroger Co. is a citizen of Ohio.

40.    Smith's Food and Drug Centers, Inc. is an Ohio corporation with its principal place of business located at 1014 Vine Street, Cincinnati, Ohio 45202. Smith's Food and Drug Centers, Inc. is a citizen of Ohio.

41.    Fred Meyer Stores, Inc. is an Ohio corporation with its principal place of business located at 3800 SE 22nd Avenue, Portland, Oregon 97202. Fred Meyer Stores, Inc. is a citizen of Ohio and Oregon.

42.    Smith's Food and Drug Centers, Inc. and Fred Meyer Stores, Inc. are subsidiaries of the Kroger Co.

43.    At all relevant times, Plaintiff purchased and ingested, or was otherwise exposed, to Ranitidine-Containing Drugs from Kroger Co. and/or its subsidiaries' locations in California, including stores in Los Angeles.

### 3.  Walgreens

44. Defendant Walgreen Co. is a Delaware corporation with its principal place of business located at 108 Wilmot Road, Deerfield, Illinois 60015. Walgreen Co. is a citizen of Delaware and Illinois.

45. Defendant Duane Reade, Inc. is a Delaware corporation with its principal place of business located at 108 Wilmot Road, Deerfield, Illinois 60015. Duane Reade, Inc. is a citizen of Delaware and Illinois.

46. Defendant Walgreens Boots Alliance, Inc. is a Delaware corporation with its principal place of business located at 108 Wilmot Road, Deerfield, Illinois 60015. Walgreens Boots Alliance is a citizen of Delaware and Illinois.

47.     Walgreen Co. and Duane Reade, Inc. are subsidiaries of Walgreens Boots Alliance.

48.     Plaintiff purchased and ingested Ranitidine-Containing Drugs from Walgreen Co. and/or its subsidiaries in California, including stores in Los Angeles at all relevant times.

#### 4.     Walmart

49.      Defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716. Walmart Inc. is a citizen of Delaware and Arkansas.

50.     At all relevant times, Plaintiff purchased and ingested Ranitidine-Containing Drugs from pharmacies at Walmart locations in California, including stores in Los Angeles.

#### 5.     Albertson's

51. Defendant Albertson's Companies, Inc. is a Delaware corporation with its principal place of business located at 132 E. Lake Street, McCall, Idaho 83638.  Albertson's is a citizen of Delaware and Idaho.

52. Safeway, Inc. is a Delaware corporation with its principal place of business located at 5918 Stoneridge Mall Road, Pleasanton, California 94588.  Safeway, Inc. is a citizen of Delaware and California.

53.     Safeway, Inc. is a subsidiary of Albertson's.

54.     At all relevant times, Plaintiff purchased, purchased, ingested, or was otherwise exposed to Ranitidine-Containing Drugs from Albertson's or Safeway locations in California, including stores in Los Angeles.

#### 6.     Rite Aid

55.     Defendant Rite Aid Corporation ("Rite Aid") is a Delaware corporation with its principal place of business located at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.  Rite Aid is a citizen of Delaware and Pennsylvania.

56.     At all relevant times, Plaintiff purchased, ingested, or was otherwise exposed to Ranitidine-Containing Drugs from Rite Aid locations in California, including stores in Los Angeles.

**D.   Axminster Medical Group, Inc.**

57.     Defendant Axminster Medical Group, Inc. ("Axminster") is a California Corporation with a principal place of business located at 21311 Madrona Ave, Ste 101, Torrance, CA 90503.

58.     Plaintiff sought medical treatment from one or more doctors at Axminster from the early 1980's to late 1980's and/or early 1990's.

59.     During the course of Plaintiff's treatment at Axminster, one or more doctors recommended that she take over the counter Zantac to treat upset stomach and acid reflux.

60.     Plaintiff first began ingesting Ranitidine-Containing Drugs as a result of one or more doctors at Axminster advising and/or recommending that Plaintiff take over-the-counter Zantac to treat stomach issues. Plaintiff began taking over the counter Zantac because she relied on the level of skill, knowledge, and care of the medical practitioners at Axminster in offering medical advice.

61.     The true names or capacities, whether individual, corporate, associate or otherwise of defendants, DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues said DOE defendants by such fictitious names.

62.     Plaintiff is informed and believes, and thereon alleges that each of the defendants designated herein as a DOE is responsible for the unlawful acts as herein alleged, and Plaintiff will request leave of the Court to amend this complaint to show its true names and capacities when the same have been ascertained.

63.     Plaintiff is informed and believes, and thereon alleges that at all times herein

mentioned, Defendants, and each of them, were the agents, servants, and employees each of the other, acting within the course and scope of said agency and employment, with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions alleged herein were made known to and ratified by each of the Defendants (including any DOE defendant).

64. Defendant and each and every DOE Defendant shall be referred to collectively as "Defendants" hereafter.

## III.   JURISDICTION AND VENUE

65.   This Court has jurisdiction over all causes of action asserted herein, and the amount in controversy exceeds the jurisdictional minimum of this Court.

66.   Defendants caused tortious injury by acts and omissions in this judicial jurisdiction and caused tortious injury in this jurisdiction by acts and omissions outside this jurisdiction while regularly doing and soliciting business, engaging in a persistent course of conduct, and deriving substantial revenue from goods used or consumed and services rendered in this jurisdiction.

67.   Defendants, and each of them, are subject to the jurisdiction of this Court by virtue of their dealings and transactions in Los Angeles County and by having caused injuries through their acts and omissions within this County to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

68.   Venue is proper in this Court because the injury and damage to Plaintiff occurred within Los Angeles County. California Code of Civ. Proc. § 395(a).

69.   Plaintiff seeks relief that is in the jurisdictional limits of the Court.

## IV.   FACTUAL BACKGROUND

### A.   Brief History of Ranitidine and Zantac

70.   Scientist John Bradshaw originally discovered and developed Zantac (ranitidine) on behalf of GSK in 1976.

71.   Zantac has been sold to consumers since the early 1980's, first by prescription and later as an over-the-counter ("OTC") medication.

72.     The drug is in a class of medications called histamine H2-receptor antagonists (or H2 blockers).  H2 blockers decrease the amount of acid produced by cells in the lining of the stomach.

73.     Cimetidine (Tagamet), discovered and developed by Smith, Kline and French2, was the first H2 blocker to be developed and is the prototypical histamine H2 receptor antagonist. The later members of the class were developed from Tagamet. Specifically, Zantac was developed by GSK in response to the success of cimetidine.

74.     In 1983, the FDA approved the sale of prescription Zantac, (NDA 18-703), and Zantac quickly became one of GSK's most successful products.  Zantac was the first prescription drug in history to reach $1 billion in sales.

75.     Beginning in 1995, the FDA approved the sale of various forms of OTC Zantac.

76.     GSK's patent on the original prescription Zantac product expired in 1997, allowing generic manufacturers to sell prescription ranitidine to consumers.

77.     The FDA approved numerous generic manufacturers for the sale of prescription and OTC ranitidine.

78.     Even after the entry of generic competition, brand name manufacturers continued to sell prescription and OTC Zantac.

79.     The joint venture between GSK and Warner-Lambert ended in 1998, with Warner-Lambert retaining control over the sale of OTC Zantac in the United States and GSK retaining control over the sale of prescription Zantac in the United States.

80.     Pfizer acquired Warner-Lambert in 2000 and took control of the sale of OTC Zantac in the United States.

81.     Johnson & Johnson and Pfizer sold the United States rights to OTC Zantac to Boehringer Ingelheim in 2006.

82.     The right to sell OTC Zantac in the United States later passed to Sanofi.

83.     In 2017, Boehringer Ingelheim sold the rights to OTC Zantac to Sanofi pursuant to a Sales Purchase Agreement. As part of this deal, Sanofi obtained control and responsibility over Boehringer Ingelheim's entire consumer healthcare business, including the OTC Zantac NDAs.

However, Boehringer Ingelheim continued to manufacture all drugs subject to the SPA, including Zantac.

84.     When GSK's and Pfizer's patent on the original OTC Zantac product expired, generic manufacturers could sell OTC ranitidine to consumers.

85.     Sanofi controlled the NDAs for OTC Zantac and marketed, distributed, and sold Zantac in the United States from January 2017, until the FDA issued a recall in 2019.

**B.     The FDA Recall**

86.     On April 1, 2020, the FDA requested the voluntary withdrawal of all Ranitidine-Containing Drugs from the market after it began reviewing the safety of ranitidine, with specific focus on the presence of NDMA.

**C.     The Dangers of NDMA**

87.     The U.S. Department of Health and Human Services ("DHHS") that NDMA is reasonably anticipated to be a human carcinogen.[1]

88.     The high levels of NDMA produced by Zantac are inherent to the molecular structure of ranitidine, the active ingredient in Zantac. The ranitidine molecule contains both a nitrite and DMA group which are well known to combine to form NDMA. Ranitidine produces NDMA by "react[ing] with itself," such that every dosage of ranitidine exposes consumers to NDMA.

89.     According to the U.S. Environmental Protection Agency ("EPA"), "NDMA is a semi volatile organic chemical that forms in both industrial and natural processes[.]"[2]   It is one of the simplest members of a class of N-nitrosamines, a family of potent carcinogens. Scientists have long recognized the dangers that NDMA poses to human health.

90.     Both the EPA and the IARC classify NDMA as a probable human carcinogen.[3] Further, in 1978, IARC stated that NDMA "should be regarded for practical purposes as if it were

---

[1]  U.S. Envtl Prot. Agency, Technical Fact Sheet – N-Nitroso-dimethylamine (NDMA) (Nov. 2017), https://www.epa.gov/sites/production/files/2017-10/documents/ndma_fact_sheet_update_9-15-17_508.pdf.
[2]  *Id.*
[3]  *Id.*; International Agency for Research on Cancer (IARC) - Summaries & Evaluations, N-NITROSODIMETHYLAMINE (1978), http://www.inchem.org/documents/iarc/vol17/n-nitrosodimethylamine.html.

1    carcinogenic to humans."[4]

2        91.    The World Health Organization states that there is "conclusive evidence that NDMA

3    is a potent carcinogen" and that there is "clear evidence of carcinogenicity."[5]

4        **D.**    **How Ranitidine Transforms into NDMA Within the Human Body**

5        92.    The ranitidine molecule itself contains the constituent molecules to form NDMA.

6        93.    Specifically, the O=N (Nitroso) on one side of the ranitidine molecule can combine

7    with the H3C-N-CH3 (DMA) on the other side to form NDMA.

8        94.    The formation of NDMA by the reaction of DMA and a nitroso source (such as a

9    nitrite) is well characterized in the scientific literature and has been identified as a concern for

10   contamination of the U.S. water supply.  In 2003, alarming levels of NDMA in drinking water

11   processed by wastewater treatment plants were specifically linked to the presence of ranitidine.

12        95.    Ranitidine leads to NDMA exposure in four ways: (a) formation of NDMA in the

13   human digestive system; (b) formation of NDMA due to an enzymatic reaction throughout the human

14   body; (c) formation of NDMA over time under normal storage conditions and that increases

15   significantly when exposed to heat; and (d) formation of NDMA during manufacture.

16        **1.**    **NDMA Forms in The Human Stomach**

17        96.    When the ranitidine molecule is exposed to the acidic environment of the stomach,

18   particularly when accompanied by nitrites (a chemical commonly found in heartburn-inducing

19   foods), the Nitroso molecule (O=N) and the DMA molecule (H3C-N-CH3) break off and reform as

20   NDMA.

21        97.    In 1981, two years before the FDA approved Zantac, Dr. Silvio de Flora published the

22   results of experiments he conducted on ranitidine in the well-known journal, The Lancet. When

23   ranitidine was exposed to human gastric fluid in combination with nitrites, his experiment showed

24

25

26       [4] IARC, Monographs on the Evaluation of the Carcinogenic Risk of Chemicals to Humans, Some N-Nitroso Compounds, Vol. 17, 151-152 (May 1978) (Emphasis added.).

27       [5] WHO, Guidelines for Drinking-Water Quality, N-Nitrosodimethylamine (NDMA) (3d ed. 2008), https://www.who.int/water_sanitation_health/dwq/chemicals/ndmasummary_2ndadd.pdf.  (Emphasis added.).

28

"toxic and mutagenic effects[.]"[6]  Dr. Flora formed the hypothesis that these mutagenic effects could have been caused by the "formation of more than one nitroso derivative [which includes NDMA] under our experimental conditions." *Id.*  Dr. Flora cautioned that, concerning ranitidine ingestion, "it would seem prudent to ... suggest[] a diet low in nitrates and nitrites, by asking patients not to take these at times close to (or with) meals[.]" *Id.*

98.    Notwithstanding Dr. Flora's findings in 1981, GSK told the FDA in the early 1980's that the nitrite would not likely be formed in the stomach because an unrealistically large amount of the nitrate needs to be present to form and maintain the nitrosamine.  GSK even applied for and obtained an indication for OTC Zantac "[f]or the prevention of meal-induced heartburn at a dose of 75 mg taken 30 to 60 minutes prior to a meal."

99.    Additionally, before Zantac was approved by the FDA, GSK admitted to the FDA that its own studies evidenced that ranitidine use caused the proliferation of bacteria in the human stomach known to convert nitrates to nitrites and elevated levels of nitrite in the stomach. While GSK did acknowledge that this could increase the risk of developing cancer, the risk was dismissed based on assumptions about human eating habits at that time.

100.    Summarily, GSK knew—before Zantac hit the market —that ranitidine could react with nitrite in the human stomach to form NDMA, and that long-term use of ranitidine could result in elevated levels of nitrite in the human stomach.

101.    In response to Dr. Flora's findings, GSK conducted a clinical study in 1982 (republished in 1987) that purportedly tested for NDMA.  However, the gold-standard mass spectrometry to test for NDMA was not utilized to support GSK's findings.  Instead, GSK used a process that inefficiently measured N-nitrosamines. Even more telling, GSK failed to test the gastric samples that included ranitidine in them.

102.    In 1983, Dr. Flora, along with four other researchers, published their complete findings

---

[6]  Silvio de Flora, *Cimetidine, Ranitidine and Their Mutagenic Nitroso Derivatives*, 318 THE LANCET 8253, 993−94 (Oct. 31, 1981).

regarding the genotoxicity of ranitidine.[7] Dr. Flora's team "confirm[ed] our preliminary findings on the formation of genotoxic derivatives from nitrite and ranitidine[,]" emphasizing "the widespread clinical use [of ranitidine] and the possibility of a long-term maintenance therapy suggest the prudent adoption of some simple measures, such as a diet low in nitrates and nitrites or the prescription of these anti-ulcer drugs at a suitable interval from meals." *Id.*

103.    The high instability of the ranitidine molecule was elucidated in multiple scientific studies investigating ranitidine as a source of NDMA in drinking water and specific mechanisms for the breakdown of ranitidine were proposed.[8]  These studies underscore the instability of the NDMA group on the ranitidine molecule and its ability to form NDMA in the environment of water treatment plants which supply many American cities with water.

104.    In 2016, researchers at Stanford University conducted an experiment by measuring the NDMA in urine of healthy individuals over the course of 24 hours and administering one dose of ranitidine, then measuring the NDMA in the urine of the same volunteers for another 24 hours.[9]  The study found that the level of NDMA generally increased by a staggering 400 times.

105.    The Stanford study clearly proved that unsafe levels of NDMA are formed in the human body as a result of ranitidine ingestion.

106.    On September 9, 2019, Valisure LLC and ValisureRX LLC, a pharmacy and testing laboratory, filed a Citizen Petition calling for the recall of all Ranitidine-Containing Drugs due to scientific studies demonstrating that ranitidine can transform into the cancer-causing NDMA.

107.    The results of Valisure's testing show levels of NDMA well above 2 million ng per 150 mg Zantac tablet, as shown below in Table 1.

---

[7]  Silvio de Flora, *et al., Genotoxicity of nitrosated ranitidine,* 4 CARCINOGENESIS 3, 255-60 (1983).
[8]  Le Roux, et al., *NDMA Formation by Chloramination of Ranitidine: Kinetics and Mechanism*, 46 Environ. Sci. Technol 20, 11095-103 (2012).
[9]  Zeng, et al., *Oral intake of ranitidine increases urinary excretion of N-nitrosodimethylamine*, 37 CARCINOGENESIS 625-34 (2016).

| Table 1 — Ranitidine Samples Tested by Valisure Laboratory Using GC/MS Protocol | | |
|---|---|---|
| 150 mg Tablets or equivalent | Lot # | NDMA per tablet (ng) |
| Reference Powder* | 125619 | 2,472,531 |
| Zantac, Brand OTC | 18M498M | 2,511,469 |
| Zantac (mint), Brand OTC | 18H546 | 2,834,798 |
| Wal-Zan, Walgreens | 79L80081 9A | 2,444,046 |
| Wal-Zan (mint), Walgreens | 8ME2640 | 2,635,006 |
| Ranitidine, CVS | 9BE2773 | 2,520,311 |
| Zantac (mint), CVS | 9AE2864 | 3,267,968 |
| Ranitidine, Equate | 9BE2772 | 2,479,872 |
| Ranitidine (mint), Equate | 8ME2642 | 2,805,259 |
| Ranitidine, Strides | 77024060A | 2,951,649 |

108.    Valisure's testing shows, on average, 2,692,291 ng of NDMA in one 150 mg Zantac tablet. Considering the FDA's permissible limit is 96 ng, this would put the level of NDMA at 28,000 times the legal limit. Smoking at least 6,200 cigarettes achieves the same levels of NDMA found in one 150 mg dose of Zantac.

109.    On September 26, 2019, Walgreens, Walmart, Rite-Aid, and Apotex Corp.—makers of generic OTC ranitidine—voluntarily recalled all Ranitidine-Containing Drugs and removed the drugs from the shelves.

110.    On September 28, 2019, CVS Health Corp. announced that it would terminate the sale of Zantac and its own generic Ranitidine-Containing Drugs due to concerns that it might contain a carcinogen.

111.    Sanofi voluntarily recalled all brand-name OTC Zantac on October 18, 2019.

112.    The results of Valisure's tests on ranitidine tablets in biologically relevant conditions illustrate significant NDMA formation under simulated gastric conditions with nitrite present.

113.    Under biologically relevant conditions, when nitrites are present, high levels of NDMA are found in one dose of 150 mg Zantac, ranging between 245 and 3,100 times above the

FDA's permissible limit. One would need to smoke over 500 cigarettes to achieve the same levels of NMDA found in one dose of 150 mg Zantac at the 25 nanogram level (over 7,000 for the 50 nanogram level).

114.    Assessed overall, the scientific data in literature demonstrates that the ingestion of ranitidine in the presence of human-relevant levels of nitrite in the stomach—a substance that is commonly found in foods that induce heartburn and that is known to be elevated in people taking ranitidine for longer than a month—the ranitidine molecule breaks down into levels of NDMA that would dramatically increase a person's risk of developing cancer

### 2.    Formation of NDMA in the Other Organs of Human Body

115.    Valisure's findings also identified a possible enzymatic mechanism for the liberation of ranitidine's DMA group via the human enzyme dimethylarginine dimethylaminohydrolase ("DDAH"), which can occur in other tissues and organs separate from the stomach.

116.    Computational modelling demonstrates that ranitidine can readily bind to the DDAH-1enzyme in a manner comparable to the natural substrate of DDAH-1 known as asymmetric dimethylarginine.

117.    This is an indicator that the enzyme DDAH-1 increases formation of NDMA in the human body when ranitidine is present; therefore, the expression of the DDAH-1 gene is useful for identifying organs most susceptible to this action.

118.    While DDAH-1 is most strongly expressed in the kidneys, it is broadly distributed throughout the body, including the liver, prostate, stomach, bladder, brain, colon, and prostate. This distribution offers both a general mechanism for NDMA formation in the human body from ranitidine and specifically causes concern for NDMA's effects on numerous organs, such as the bladder.

119.    The possible enzymatic reaction of ranitidine to DDAH-1, or other enzymes, suggests that high levels of NDMA can form throughout the human body - ranitidine metabolizes and circulates throughout the human body, crossing the placental and blood-brain barrier, within 1-2 hours. When the ranitidine interacts with the DDAH-1 enzyme in various organs throughout the body, it breaks down into NDMA, as validated by the Stanford Study.

### 3.  Formation of NDMA by Exposure to Heat and/or Time

120.    As indicated in Valisure's September 2019 Citizen Petition to the FDA, the risk of creating NDMA by exposing ranitidine to heat is generally known and documented in the scientific community from the early 1980's.

121.    In response to Valisure's Petition, on October 2, 2019, the FDA recommended that researchers use the LC-HRMS protocol for detecting NDMA in ranitidine because the contemporaneous "testing method does not use elevated temperatures" and has been proven capable of detecting NDMA.

122.    In or about early 2020, Emery Pharma ran a series of tests on ranitidine using the FDA-recommended LC-HRMS protocol.  During these tests, the researchers exposed ranitidine to 70 °C at different periods of time.  The results showed that increasing levels of NDMA formed based on exposure to heat. The researchers cautioned (emphasis added):

> **NDMA accumulates in ranitidine-containing drug products on exposure to elevated temperatures, which would be routinely reached <u>during shipment and during storage</u>.** More importantly, these conditions occur post-lot release by the manufacturer. Hence, **while NDMA levels in ranitidine may be acceptable at the source, they may not be so when the drug is <u>purchased</u> and subsequently at the time of <u>consumption by the consumer</u>**.

123.    Given these facts, in conjunction with the historical data from the 1980s, it is evident that during normal transport and storage, and especially when exposed to heat, the ranitidine molecule systematically breaks down into cancer causing NDMA, accumulating over time in the finished product.

124.    Considering ranitidine-containing products have an approved shelf life of 36 months, the possibility, and even likelihood, of the drug accumulating dangerously high levels of NDMA prior to consumption is unreasonably high.

### 4.  Ranitidine Exposure Is Directly Linked to Cancer

125.    In addition to studies examining how NDMA causes cancer in humans, researchers have also specifically linked ranitidine with cancer.

126.    One epidemiology study, published in 2004, showed that men taking either ranitidine

1    or cimetidine (Tagamet) experienced increased risks of bladder cancer.[10]

2    127.    In another comprehensive epidemiological study that examined various cancer risks

3    and H2 blockers, including ranitidine, the data showed that ranitidine consumption increased the risk

4    of prostate, lung, esophageal, pancreatic, and kidney cancer. Notably, the study also indicated that

5    people under the age of 60 that took ranitidine were five times more likely to contract prostate cancer.

6    128.    A study published in 2018 demonstrated an increased risk of liver cancer associated

7    with use of ranitidine in comparison with other histamine type 2 receptor antagonists (H2RAs) in the

8    class.[11]

9    129.    Another study in 2018 found an increased risk in hepatocellular carcinoma associated

10   with use of H2RAs.[12]   The authors evaluated the risk of cancer in association with proton pump

11   inhibitors and looked at H2RAs as a confounder.  Even narrowed to consideration of use of H2RAs

12   within one year of cancer diagnosis, the study showed an increased odds ratio associated with use of

13   H2RAs and hepatocellular carcinoma, a type of liver cancer.

14        **E.    Defendants Knew or Should Have Known of the NDMA Risk**

15   130.    Between 2014 and 2017, when Plaintiff purchased and ingested Ranitidine-Containing

16   Drugs, Defendants knew or should have known that the weight of scientific evidence showed that

17   Ranitidine-Containing Drugs exposed consumers to dangerous levels of NDMA.

18   131.    Defendants failed to disclose this risk to consumers on the drug's label—or through

19   any other means—and Defendants failed to report these risks to the FDA.

20   132.    As early as 1981, scientific research was available that evidenced elevated rates of

21   NDMA.  This was known or should have been known by the Defendants when they began marketing,

22   promoting, labelling, and selling Ranitidine-Containing Drugs.

23   133.    Defendants concealed the dangerous hazards of ingesting Zantac and Ranitidine-

24

25        [10] D. Michaud, et al, *Peptic Ulcer Disease and the Risk of Bladder Cancer in a Prospective Study of Male Health Professionals,* 13 CANCER EPI. BIOMARK. & PREV. 250-54, 252 (Feb. 2004).

26        [11] Kim Tu Tran,, et al., *Proton pump inhibitor and histamine-2 receptor antagonist use and risk of liver cancer in two population-based studies,* 48 ALIMENTARY PHARMA & THERAP 1, 55-64 (2018).

27        [12] Shao, Y-HJ, et al., *Association between proton pump inhibitors and the risk of hepatocellular carcinoma,* 48 ALIMENTARY PHARMA & THERAP 4, 460-68 (2018).

28

Containing Drugs from consumers by neglecting to report it to the FDA, which in turn relies on manufacturers (and testing laboratories) to bring new information about approved drugs.

134.    Manufacturers of an approved drug are required by regulations to submit an annual report to the FDA containing, among other things, new information regarding the drug's safety pursuant to 21 C.F.R. § 314.81(b)(2):

> The report is required to contain . . . [a] brief summary of significant new information from the previous year that might affect the safety, effectiveness, or labeling of the drug product. The report is also required to contain a brief description of actions the applicant has taken or intends to take as a result of this new information, for example, submit a labeling supplement, add a warning to the labeling, or initiate a new study.

135.    21 C.F.R. § 314.81(b)(2)(v) provides:

> The manufacturer's annual report also must contain copies of unpublished reports and summaries of published reports of new toxicological findings in animal studies and in vitro studies (e.g., mutagenicity) conducted by, or otherwise obtained by, the [manufacturer] concerning the ingredients in the drug product.

136.    Defendants ignored these regulations and, disregarding the scientific evidence available to them, did not report to the FDA significant new information affecting the safety or labeling of Ranitidine-Containing Drugs.

137.    Knowledge regarding the risk of NDMA in ranitidine was sufficiently accessible in publicly available scientific literature that any maker or distributor, consistent with their heightened obligations to ensure the safety of their products, should have known about the potential NDMA risks associated with ranitidine consumption.

138.    Defendants failed to warn the public and failed to conduct and/or publish and share relevant studies or testing with the FDA and scientific community concerning the link between NDMA and Ranitidine-Containing Drugs.

139.    Defendants also knew that they are required by federal law to store, warehouse, and distribute pharmaceutical drugs in accordance with current "Good Manufacturing Practices" ("GMPs") to ensure they meet safety, quality, purity, identity, and strength standards. *See* 21 U.S.C. § 351(a)(2)(B).

140.    21 C.F.R. § 211.142(b) states that the GMPs required that warehousing of drug

products shall be performed to ensure "[s]torage of drug products under appropriate conditions of temperature, humidity, and light so that the identity, strength, quality, and purity of the drug products are not affected." Stated differently, Defendants had a duty and were obligated to safely store, handle, and warehouse Ranitidine-Containing Drugs.

141.    The FDA's own testing demonstrated the following rudimentary facts that would have helped reduce the hazards of Ranitidine-Containing Drugs had Defendants invested their profits into testing and research: (a) improper storage of Ranitidine-Containing Drugs has resulted in extremely high levels of NDMA; (b) NDMA can increase in Ranitidine-Containing Drugs even under normal storage conditions; (c) NDMA has been found to increase significantly in samples stored at higher temperatures, including temperatures the product may be exposed to during distribution and handling by consumers; and (d) Ranitidine-Containing Drugs age the level of NDMA in the product increases.

142.    Based on these facts, other findings, and scientific research, the FDA concluded that these defects raised the level of NDMA in Ranitidine-Containing Drugs well above the safe daily intake limit to the point that Ranitidine-Containing Drugs had to be banned as of April 2020.

143.    As early as 1980, consumer products containing unsafe levels of NDMA and other nitrosamines have been recalled by manufacturers, either voluntarily or at the direction of the FDA.

144.    A 1979 news article noted that "NDMA has caused cancer in nearly every laboratory animal tested so far."[13]

145.    In 1981, Dr. Silvio de Flora published the results of his experiments showing that ranitidine was converting into mutagenic N-nitroso compounds, of which NDMA is one, in human gastric fluid when accompanied by nitrites – a substance commonly found in food and in the body, including foods that consumers were informed that they could consume shortly before or after

---

[13]   Jane Brody, *Bottoms Up: Alcohol in Moderation Can Extend Life*, GLOBE & MAIL (CANADA), Oct. 11, 1979 (emphasis added); *see* Rudy Platiel, *Anger Grows as Officials Unable to Trace Poison in Reserve's Water*, GLOBE & MAIL (CANADA), Jan. 6, 1990 (reporting that residents of Six Nations Indian Reserve "have been advised not to drink, cook or wash in the water because testing has found high levels of N-nitrosodimethylamine (NDMA), an industrial byproduct chemical that has been linked to cancer"); S.A. Kyrtopoulos, *DNA Adducts in Humans after Exposure to Methylating Agents*, 405 MUTATION RES. 2, 135 (1998) (noting that "chronic exposure of rats to very low doses of NDMA gives rise predominantly to liver tumors, including tumors of the liver cells (hepatocellular carcinomas), bile ducts, blood vessels and Kupffer cells").

ingesting ranitidine.[14]

146.   In a 2011 epidemiological study looking at NDMA dietary exposure with 3,268 cases and a follow up of 11.4 years, researchers concluded that "[d]ietary NDMA intake was significantly associated with increased cancer risk in men and women."[15]

147.   At all relevant times, Defendants failed to disclose to Plaintiff or her physicians the scientific link between ranitidine and NDMA.  More generally, Defendants also failed to disclose the scientific link to prescribing physicians of Ranitidine-Containing Drugs or the FDA.

**F.   Equitable Tolling**

148.   The nature of Plaintiff's injuries in relation to Defendants' conduct was not discovered, and through reasonable care and due diligence, could not have been discovered, until a date within the applicable statute of limitations for filing Plaintiff's claims.

149.   Within the period of any applicable statutes of limitation, Plaintiff was unaware and could not have discovered through the exercise of reasonable diligence that Defendants were not disclosing the dangerous levels of the carcinogen NDMA produced by Ranitidine-Containing Drugs, including Zantac.

150.   Plaintiff asserts all applicable statutory and common law rights and theories related to the tolling or extension of any applicable statute of limitations, including equitable tolling, delayed discovery, discovery rules, and/or fraudulent concealment.

151.   At all relevant times, Defendants knowingly, affirmatively, and actively concealed or recklessly disregarded the true risks of NDMA exposure associated with Ranitidine-Containing Drugs, including Zantac, and never disclosed this risk to the FDA or the consuming public.

152.   Based on the foregoing, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to Plaintiff's claims.

---

[14] Silvio de Flora, *Cimetidine, Ranitidine and Their Mutagenic Nitroso Derivatives*, 318 LANCET 8253, 993-94 (Oct. 31, 1981).
[15] Yet Hua Loh et al., *N-nitroso Compounds and Cancer Incidence: The European Prospective Investigation into Cancer and Nutrition (EPIC)-Norfolk Study*, 93 AM. J. CLINICAL NUTRITION 5, 1053-61 (May 2011).

## V.      CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### STRICT LIABILITY – DESIGN DEFECT

### (AGAINST ALL DEFENDANTS)

153.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully stated herein.

154.     At all relevant times, Defendants have been in the business of designing, manufacturing, labeling, marketing and promoting, selling, inspecting, handling, storing, and distributing defective Ranitidine-Containing Drugs to consumers.

155.     At all relevant times, Defendants' Ranitidine-Containing Drugs have contained unreasonably dangerous design defects, including, but not limited to, grave risks that may follow the foreseeable use of Ranitidine-Containing Drugs.

156.     At all relevant times, Defendants had a duty to ensure that Ranitidine-Containing Drugs did not pose unreasonable and dangerous risks to consumers.

157.     Ranitidine-Containing Drugs did not perform as safely as an ordinary consumer would have expected when used in an intended and foreseeable manner.

158.     Plaintiff was harmed by ingesting defective and unreasonably dangerous Ranitidine-Containing Drugs without knowledge of the grave risks of cancer and other serious illnesses.

159.     The Ranitidine-Containing Drugs' failure to operate safely was a substantial factor in causing Plaintiff's harm.  Plaintiff ingested these drugs, which caused Plaintiff's conscious pain, suffering, and bodily impairment, including breast cancer.

### SECOND CAUSE OF ACTION

### STRICT LIABILITY – FAILURE TO WARN

### (AGAINST MANUFACTURER-DEFENDANTS)

160.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully stated herein.

161.     Defendants manufactured Ranitidine-Containing Drugs.

162.    At all relevant times, Defendants' Zantac products reached the intended consumers, handlers, and users or other persons coming into contact with these products within this judicial district and throughout the United States, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Defendants.

163.    The Ranitidine-Containing Drugs had potential risks that Defendants knew or were knowable in light of scientific and medical knowledge that was generally accepted in the scientific community at the time of manufacture.

164.    The potential risk of cancer presented a substantial danger when Ranitidine-Containing Drugs are used in an intended and/or reasonably foreseeable way.

165.    Ordinary consumers would not have been able to recognize the potential risks of cancer as a result of ingesting Ranitidine-Containing Drugs.

166.    Defendants failed to adequately warn of potential risks from Ranitidine-Containing Drugs.  During the time period Plaintiff ingested and/or was exposed to Ranitidine-Containing Drugs, the warnings associated with the product were incomplete, vague, or otherwise inadequate and failed to notify consumers to the health risks, including risks of cancer, stemming from the use of such Ranitidine-Containing Drugs.

167.    The lack of sufficient warning was a substantial factor in causing Plaintiff's harm.  As a result of the lack of sufficient warning, Plaintiff chose to ingest these drugs, which caused Plaintiff's conscious pain, suffering, and bodily impairment, including breast cancer.

**THIRD CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**(AGAINST MANUFACTURER-DEFENDANTS)**

168.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully stated herein.

169.    While representing carcinogenic Ranitidine-Containing Drugs as safe, Manufacturer-Defendants failed to employ manufacturing methods that ensured Ranitidine-Containing Drugs met the quality and purity characteristics they purported to possess.

170.    As early as 1981, scientific research was available that evidenced elevated rates of NDMA.  This was known or should have been known by the Defendants when they began marketing, promoting, labelling, and selling Ranitidine-Containing Drugs.

171.    Defendants failed to disclose this risk to consumers on the drug's label—or through any other means—and Defendants failed to report these risks to the FDA.

172.    The public, including Plaintiff, justifiably relies on information from the FDA and drug labels, as well as medical providers, to communicate potentially life-altering risks of exposure and/or ingestion of medications.

173.    As a result of Defendants' representation of the safety of Ranitidine-Containing Drugs, Plaintiff chose to ingest these drugs, which caused Plaintiff's conscious pain, suffering, and bodily impairment, including breast cancer.

**FOURTH CAUSE OF ACTION**

**FRAUDULENT CONCEALMENT**

**(AGAINST MANUFACTURER-DEFENDANTS)**

174.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully stated therein.

175.    Despite the available scientific evidence of elevated rates of NDMA in Ranitidine-Containing Drugs, Defendants concealed the dangerous hazards of ingesting Zantac and Ranitidine-Containing Drugs from consumers by failing to report it to the FDA.  The FDA relies on manufacturers to present new and updated information regarding approved drugs.  The public, including Plaintiff, in turn depends on the FDA to make this information accessible to them.

176.    Manufacturers of an approved drug are required by regulations to submit an annual report to the FDA containing, among other things, new information regarding the drug's safety pursuant to C.F.R. § 314.81(b)(2) and 21 C.F.R. § 314.81(b)(2)(v).

177.     In addition to failing to report these significant risks to the FDA, the Manufacturer-Defendants deliberately concealed grave risks when marketing and promoting Ranitidine-Containing Drugs that were known to the Defendant-Manufacturers but unknown to Plaintiff.  These concealments were motivated by Manufacturers' desire to profit from Ranitidine Containing Drugs by representing to consumers that they were safe.  Defendants were aware that full disclosure of the true life-threatening risks would likely cause the FDA recall long before April 1, 2020.

178.     Plaintiff would not have ingested the Ranitidine-Containing Drugs had she been aware of the severity of these risks.

179.     As a direct result of ingesting these drugs, Plaintiff experienced conscious pain and suffering and bodily impairment, including, but not limited to breast cancer, resulting from the ingestion and/or exposure to Ranitidine-Containing Drugs.

## FIFTH CAUSE OF ACTION

### NEGLIGENCE – MANUFACTURE

### (AGAINST MANUFACTURER-DEFENDANTS)

180.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully stated herein.

181.     Defendants distributed, marketed and/or sold Ranitidine-Containing Drugs to consumers within Los Angeles County.

182.     At all relevant times, Defendants knew or, in the exercise of reasonable care, should have known, that Ranitidine-Containing Drugs were dangerous when used in a reasonably foreseeable manner.

183.     At all relevant times, Defendants knew or should have known that Ranitidine Containing Drugs had been contaminated with an industrial chemical known to cause cancer.

184.     At all relevant times, Defendants had a duty to exercise reasonable care in providing

OTC providers with: (a) specific directions for safe use of Ranitidine-Containing Drugs; (b) accurate, true, and correct information concerning the known or foreseeable risks of using Ranitidine-Containing Drugs as directed; and (c) appropriate, complete, and accurate warnings concerning the potential adverse effects of Ranitidine-Containing Drugs when used as intended, including the drugs' ability to transform into a carcinogenic compound, NDMA – through a means that could reasonably be expected to reach foreseeable users and consumers. Defendants had a duty to provide adequate warnings while Ranitidine-Containing Drugs remained on the market.

185.    At all relevant times, Defendants had a further duty to avoid tendering into the marketplace a product which Defendants knew, or should have known, posed risks outweighing its benefits or which they knew, or should have known, was dangerous and unfit for ingestion by anyone.

186.    Defendants' duty included exercising reasonable care to cease marketing and to discontinue Ranitidine-Containing Drugs when Defendants knew, or had reason to know, that the product should not be used for any purpose considering its relative risks.

187.    Defendants knew or reasonably should have known that consumers would not be aware of the danger or the carcinogenic properties of Ranitidine-Containing Drugs when ingested.

188.    Defendants failed to adequately warn of the danger of the consumption of Ranitidine Containing Drugs.

189.    A reasonable manufacturer, distributor, or seller under the same or similar circumstances would have warned of the danger of the consumption of Ranitidine-Containing Drugs.

190.    Defendant also breached their duty of care by failing to undertake sufficient studies and conduct necessary tests to determine whether Ranitidine-Containing Drugs were safe for their intended and foreseeable consumer use.

191.    Defendants further breached their duty of care and were negligent in that while representing carcinogenic Ranitidine-Containing Drugs as safe, Defendants failed to employ manufacturing methods that ensured Ranitidine-Containing Drugs met the quality and purity characteristics they purported to possess.

192.     Defendants' breach of duty to Plaintiff was a substantial factor in causing Plaintiff's harm.

.

# SIXTH CAUSE OF ACTION

## NEGLIGENCE - OTHERS

### (AGAINST RETAILER-DEFENDANTS AND AXMINSTER MEDICAL GROUP)

193.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully stated herein.

194.     The Retailer Defendants sold, handled, and stored Ranitidine-Containing Drugs within Los Angeles County.

195.     At all relevant times, the Retailer Defendants knew - or in the exercise of ordinary and reasonable care, should have known - of the hazards and dangers associated with Ranitidine - Containing Drugs' intended or foreseeable use.

196.     At all relevant times, the Retailer Defendants knew, or reasonably should have known that Ranitidine-Containing Drugs' carcinogenic properties caused them to be so dangerous that they should not have been purchased or consumed by anyone.

197.     At all relevant times, the Retailer Defendants knew or should have known of the carcinogenic properties of NDMA when Ranitidine-Containing Drugs are ingested and/or the elevated levels of NDMA that result from the transport, handling, and storage of Ranitidine-Containing Drugs.

198.     The Retailer Defendants were charged with a continuing duty to provide appropriate and accurate instructions regarding the proper expiration and retest dates, as well as storage and handling of Ranitidine-Containing Drugs.

199.     The Retailer Defendants had a duty to exercise ordinary care in storing ranitidine according to the temperature requirements on the label or otherwise informed of. The  Retailer Defendants breached their duty by failing to adhere to the established practices and procedures in storing Ranitidine-Containing Drugs.  Ranitidine leads to NDMA exposure through

the formation of NDMA over time under normal storage conditions and that increases significantly when exposed to heat. The Retailer Defendants had a duty to exercise ordinary care in storing ranitidine in a way so as to avoid the formation of NDMA.

200. One or more doctors at Defendant Axminster treated Plaintiff for medical conditions including, but not limited to upset stomach and acid reflux within Los Angeles County at one or more facilities from the early 1980's to late 1980's and/or early 1990's.

201. In so doing, Defendant Axminster established a relationship with Plaintiff and a duty of a professional to use such skill, prudence, and diligence as the other members of the medical professional commonly possess and exercise when it came to their medical care and treatment of Plaintiff.

202. Defendant Axminster failed to use the level of skill, knowledge, and care in the treatment of Plaintiff that other reasonably careful medical practitioners would use in the same or similar circumstance when they recommended Ranitidine-Containing Drugs to Plaintiff, which caused Plaintiff to ingest and/or be exposed to Ranitidine-Containing Drugs for the first time.

203. The conduct of Defendant Axminster as described in this Complaint constituted a breach of that duty and the standard of care and, ultimately, negligence.

204. Plaintiff relied on the level of skill, knowledge, and care of Defendant Axminster in the treatment of Plaintiff that other reasonably careful medical practitioners would use in deciding to take the Axminster doctors' advice to ingest Ranitidine-Containing Drugs for the firm time to treat stomach issues.

205. As a direct and proximate result of the negligence, conduct and tortious acts and omissions of Defendant Axminster, Plaintiff has suffered damages and injuries, which include but are not limited to a subsequent diagnosis of breast cancer, unnecessary pain, debilitation,

hospitalization, and the need to undergo subsequent cancer treatments, including, but not limited to chemotherapy and radiation therapy. Plaintiff also suffered medical expenses and loss of earnings, mental anguish, and the loss of enjoyment of life.

206.    Defendants' breach of duty was a substantial factor in causing Plaintiff's harm.

## PUNITIVE DAMAGES
## (AGAINST MANUFACTURER-DEFENDANTS)

207.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully stated herein.

208.    The Defendant-Manufacturers' conduct, as described above, was wanton, willful, and malicious, and carried out with conscious, reckless, and flagrant disregard for the rights health, welfare, and safety of the consuming public, including Plaintiff.

209.    Since introducing Ranitidine-Containing Drugs to the market, the Defendant Manufacturers made conscious decisions to not properly manufacture, warn, test, or inform consumers, including Plaintiff, of Ranitidine-Containing Drugs' unreasonably dangerous condition.

210.    The Defendant-Manufacturers' officers, directors, and/or managing agents authorized and participated in the Defendant-Manufacturers' practice of concealing the known risks and exposing unsuspecting purchasers and users of Ranitidine-Containing Drugs to excessive levels of NDMA, a known carcinogen.

211.    The Defendant-Manufacturers deliberately marketed and promoted dangerous Ranitidine-Containing Drugs to mislead consumers, concealing grave risks known to the Defendant-Manufacturers but unknown to Plaintiff.  These concealments were motivated by Defendant-Manufacturers' desire to profit from Ranitidine-Containing Drugs by representing to consumers that they were safe.  Defendants were aware that full disclosure of the true life-threatening risks would likely cause the FDA recall long before April 1, 2020.

212.  Thus, the Defendant-Manufacturers' willful, outrageous and malicious conduct warrants an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

A.  For an award of actual and compensatory damages in such amount to be determined at trial and as provided by applicable law;

B.  For exemplary and punitive damages sufficient to punish and deter Defendants and others from future wrongful practices;

C.  For pre-judgment and post-judgment interest;

D.  For reasonable attorneys' fees, court costs, and other litigation expenses; and

E.  Such other and further relief as this Court deems just and proper.


**DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.


DATED: November 9, 2021                    **BEVERLY HILLS TRIAL ATTORNEYS, P.C.**


By:      */s/ Azar Mouzari*
         Azar Mouzari, Esq.
         Attorney for Plaintiff
         MARINA GOLDEN

Electronically FILED by Superior Court of California, County of Los Angeles on 11/17/2021 02:25 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Mariano,Deputy Clerk

Case 2:22-cv-05296   Document 1-1   Filed 07/29/22   Page 35 of 78   Page ID #:47
21STCV41533

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | **FOR COURT USE ONLY** |
|---|---|
| | *(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SANOFI-AVENTIS U.S., LLC, a Delaware Corporation; Additional Parties Attachment Form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MARINA GOLDEN, an individual.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):*  Stanley Mosk Courthouse<br>Superior Court of California, County of Los Angeles<br>111 North Hill Street, Los Angeles, California 90012, 310-858-5567 | **21STCV41533** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Azar Mouzari, Beverly Hills Trial Attorneys, P.C., 468 N. Camden Drive, Suite 238, Beverly Hills CA 90210

DATE: 11/17/2021        Sherri R. Carter Executive Officer / Clerk of Court, Clerk    , Deputy
*(Fecha)*                        *(Secretario)*           M. Mariano        *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courts.ca.gov* |
|---|---|---|

**SUM-200(A)**

| SHORT TITLE:<br>Golden v. Sanofi-Aventis U.S., LLC, et al. | CASE NUMBER:<br>21STCV41533 |
|---|---|

**INSTRUCTIONS FOR USE**

This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware Corporation; GLAXOSMITHKLINE, LLC, a Delaware Limited Liability Company; PFIZER, INC., a Delaware Corporation; CVS PHARMACY, INC., a Delaware Corporation; THE KROGER CO., an Ohio Corporation; WALGREEN CO., an Illinois Corporation; WALMART INC., an Arkansas Corporation, ALBERTSONS COMPANIES, INC., a Delaware Corporation; RITE AID CORPORATION, a Pennsylvania Corporation; AXMINSTER MEDICAL GROUP, INC., a California Corporation; and DOES 1-10, inclusive.

Page ___1___ of ___1___

**Page 1 of 1**

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

...privacy, please press the Clear This Form button after yo...   | Print this form | | Save this form |   | Clear this form |

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>11/10/2021<br><br>Sherri R. Carter, Executive Officer / Clerk of Court<br><br>By: _____ H. Flores-Hernandez _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>21STCV41533 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Serena R. Murillo | 29 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 11/12/2021
   (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By H. Flores-Hernandez _____ , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

## NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

**FILED**
Superior Court of California
County of Los Angeles

**FEB 24 2020**

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Zareta Alcira

2020-SJ-002-00

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| IN RE PERSONAL INJURY COURT ("PI COURT") PROCEDURES SPRING STREET COURTHOUSE (EFFECTIVE FEBRUARY 24, 2020) | ) CASE NO.: <br> ) <br> ) FIRST AMENDED STANDING ORDER <br> ) RE: PERSONAL INJURY PROCEDURES <br> ) AT THE SPRING STREET COURTHOUSE |

---

**ALL HEARINGS ARE SET IN THE DEPARTMENT AS REFLECTED IN THE NOTICE OF CASE ASSIGNMENT**

**FINAL STATUS CONFERENCE:**

      DATE: _____ AT 10:00 A.M.

**TRIAL:**

      DATE: _____ AT 8:30 A.M.

**OSC RE DISMISSAL**
**(CODE CIV. PROC., § 583.210):**

      DATE: _____ AT 8:30 A.M.

---

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to the California Code of Civil Procedure ("C.C.P."), the California Rules of Court ("C.R.C.") and the Los Angeles County Court Rules ("Local Rules"), the Los Angeles Superior Court ("LASC" or "Court") HEREBY AMENDS AND SUPERSEDES THE SEPTEMBER 26, 2019 STANDING ORDER AND, GENERALLY ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ("PI") ACTIONS FILED IN THE CENTRAL DISTRICT.

///

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-002-00

1.     To ensure proper assignment to a PI Court, plaintiff(s) must carefully fill out the Civil Case Cover Sheet Addendum (form LACIV 109). The Court defines "personal injury" as: "an unlimited civil case described on the Civil Case Cover Sheet Addendum and Statement of Location (LACIV 109) as Motor Vehicle-Personal Injury/Property Damage/Wrongful Death; Personal Injury/Property Damage/Wrongful Death-Uninsured Motorist; Product Liability (other than asbestos or toxic/environmental); Medical Malpractice-Physicians & Surgeons; Other Professional Health Care Malpractice; Premises Liability; Intentional Bodily Injury/Property Damage/Wrongful Death; or Other Personal Injury/Property Damage/Wrongful Death. An action for intentional infliction of emotional distress, defamation, civil rights/discrimination, or malpractice (other than medical malpractice), is not included in this definition. An action for injury to real property is not included in this definition" (Local Rule 2.3(a)(1) (A)).

Consistent with Local Rule 2.3(a)(1)(A), the Court will assign a case to the PI Courts if plaintiff(s) checks any of the following boxes in the Civil Case Cover Sheet Addendum:

    ☐  A7100 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death

    ☐  A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist

    ☐  A7260 Product Liability (not asbestos or toxic/environmental)

    ☐  A7210 Medical Malpractice – Physicians & Surgeons

    ☐  A7240 Medical Malpractice – Other Professional Health Care Malpractice

    ☐  A7250 Premises Liability (e.g., slip and fall)

    ☐  A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism etc.)

    ☐  A7220 Other Personal Injury/Property Damage/Wrongful Death

The Court will not assign cases to the PI Courts if plaintiff(s) checks any boxes elsewhere in the Civil Case Cover Sheet Addendum (any boxes on pages two and three of that form).

The Court sets the above dates in this action in the PI Court as reflected in the Notice of Case Assignment at the Spring Street Courthouse, 312 North Spring Street, Los Angeles, CA

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-002-00

1  90012 (C.R.C. Rules 3.714(b)(3), 3.729).

2  **FILING OF DOCUMENTS**

3  2.      With the exception of self-represented litigants or parties or attorneys that have obtained

4  an exemption from mandatory electronic filing, parties must electronically file documents.

5  Filings are no longer accepted via facsimile.  The requirements for electronic filing are detailed

6  in the Court's operative General Order Re Mandatory Electronic Filing for Civil, available online

7  at www.lacourt.org (link on homepage).

8  **SERVICE OF SUMMONS AND COMPLAINT**

9  3.      Plaintiff(s) shall serve the summons and complaint in this action upon defendant(s) as

10  soon as possible but no later than three years from the date when the complaint is filed

11  (C.C.P. § 583.210, subd. (a)).  On the OSC re Dismissal date noted above, the PI Court will

12  dismiss the action and/or all unserved parties unless the plaintiff(s) shows cause why the action

13  or the unserved parties should not be dismissed (C.C.P. §§ 583.250; 581, subd. (b)(4)).

14  4.      The Court sets the above trial and final status conference ("FSC") dates on the condition

15  that plaintiff(s) effectuate service on defendant(s) of the summons and complaint within six

16  months of filing the complaint.

17  5.      The PI Court will dismiss the case without prejudice pursuant to Code of Civil Procedure

18  § 581 when no party appears for trial.

19  **STIPULATIONS TO CONTINUE TRIAL**

20  6.      Provided that all parties agree (and there is no violation of the "five-year rule" (C.C.P.

21  § 583.310)), the parties may advance or continue any trial date in the PI Courts without showing

22  good cause or articulating any reason or justification for the change.  To continue or advance a

23  trial date, the parties (or their counsel of record) should jointly execute and submit a Stipulation

24  to Continue Trial, FSC and Related Motion/Discovery Dates (form LACIV CTRL-242, available

25  on the court's website, Personal Injury Court link).  The PI Courts schedule FSCs at 10:00 a.m.,

26  eight court days before the trial date.  Parties seeking to continue the trial and FSC dates shall

27  file the stipulation at least eight court days before the FSC date.  Parties seeking to advance the

28  trial and FSC dates shall file the stipulation at least eight court days before the proposed advanced

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-002-00

FSC date (C.C.P. § 595.2;  Govt. Code § 70617, subd. (c)(2)).  In selecting a new trial date, parties should avoid setting on any Monday, or the Tuesday following a court holiday.  Parties may submit a maximum of two stipulations to continue trial, for a total continuance of six months. Subsequent requests to continue trial will be granted upon a showing of good cause by noticed motion.  This rule is retroactive so that any previously granted stipulation to continue trial will count toward the maximum number of allowed continuances.

**NO CASE MANAGEMENT CONFERENCES**

7.      The PI Courts do not conduct case management conferences.  The parties need not file a Case Management Statement.

**LAW AND MOTION**

8.      Any and all electronically-filed documents must be text searchable and bookmarked. (*See* operative General Order re Mandatory Electronic Filing in Civil).

**COURTESY COPIES REQUIRED**

9.      Pursuant to the operative General Order re Mandatory Electronic Filing, courtesy copies of certain documents must be submitted directly to the PI Court courtrooms at the Spring Street Courthouse.  The PI Courts also strongly encourage the parties filing and opposing lengthy motions, such as motions for summary judgment/adjudication, to submit one or more three-ring binders organizing the courtesy copy behind tabs.  Any courtesy copies of documents with declarations and/or exhibits must be tabbed (C.R.C. Rule 3.1110(f)).  All deposition excerpts referenced in briefs must be marked on the transcripts attached as exhibits (C.R.C. Rule 3.1116(c)).

**RESERVATION HEARING DATE**

10.     Parties must reserve hearing dates for motions in the PI Courts using the Court Reservation System (CRS) available online at *www.lacourt.org* (link on homepage).  After reserving a motion hearing date, the reservation requestor must submit the papers for filing with the reservation receipt number printed on the face page of the document under the caption and attach the reservation receipt as the last page.  Parties or counsel who are unable to utilize the online CRS may reserve a motion hearing date by calling the PI courtroom, Monday through

Page 4 of 7

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-002-00

1   Friday, between 3:00 p.m. and 4:00 p.m.

2   **WITHDRAWAL OF MOTIONS**

3   11.     California Rules of Court, Rule 3.1304(b) requires a moving party to notify the court

4   immediately if a matter will not be heard on the scheduled date. In keeping with that rule, the

5   PI Courts require parties to comply with Code of Civil Procedure section 472(a) with regard to

6   the amending of pleadings related to demurrers or motions to strike so that the PI Courts do not

7   needlessly prepare tentative rulings for these matters.

8   **DISCOVERY MOTIONS**

9   12.     The purpose of an Informal Discovery Conference ("IDC") is to assist the parties to

10   resolve and/or narrow the scope of discovery disputes. Lead trial counsel on each side, or another

11   attorney with full authority to make binding agreements, must attend in person. The PI judges

12   have found that, in nearly every case, the parties amicably resolve disputes with the assistance

13   of the Court.

14   13.     Parties <u>must</u> participate in an IDC <u>before</u> a Motion to Compel Further Responses to

15   Discovery will be heard unless the moving party submits evidence, by way of declaration, that

16   the opposing party has failed or refused to participate in an IDC. Scheduling or participating in

17   an IDC does not automatically extend any deadlines imposed by the Code of Civil Procedure for

18   noticing and filing discovery motions. Ideally, the parties should participate in an IDC before a

19   motion is filed because the IDC may avoid the necessity of a motion or reduce its scope. Because

20   of that possibility, attorneys are encouraged to stipulate to extend the 45 (or 60) day deadline for

21   filing a motion to compel further discovery responses in order to allow time to participate in an

22   IDC.

23         If parties do not stipulate to extend the deadlines, the moving party may file the motion

24   to avoid it being deemed untimely.  However, the IDC must take place before the motion is

25   heard so it is suggested that the moving party reserve a date for the motion hearing that is at least

26   60 days after the date when the IDC reservation is made. Motions to Compel Further Discovery

27   Responses are heard at 10:00 a.m. If the IDC is not productive, the moving party may advance

28   the hearing on a Motion to Compel Further Discovery Responses on any available hearing date

2020-SJ-002-00

1  that complies with the notice requirements of the Code of Civil Procedure.

2  14.    Parties must reserve IDC dates in the PI Courts using CRS, which is available online at

3  www.lacourt.org (link on homepage). Parties must meet and confer regarding the available dates

4  in CRS prior to accessing the system.  After reserving the IDC date, the reservation requestor

5  must file and serve an Informal Discovery Conference Form for Personal Injury Courts (form

6  LACIV 239) at least 15 court days prior to the conference and attach the CRS reservation receipt

7  as the last page.  The opposing party may file and serve a responsive IDC form, briefly setting

8  forth that party's response, at least ten court days prior to the IDC.

9  15.    Time permitting, the PI Hub judges may be available to participate in IDCs to try to

10  resolve other types of discovery disputes.

11  **EX PARTE APPLICATIONS**

12  16.    Under the California Rules of Court, courts may only grant *ex parte* relief upon a

13  showing, by admissible evidence, that the moving party will suffer "irreparable harm,"

14  "immediate danger," or where the moving party identifies "a statutory basis for granting relief

15  ex parte" (C.R.C. Rule 3.1202(c)).  The PI Courts have no capacity to hear multiple *ex parte*

16  applications or to shorten time to add hearings to their fully booked motion calendars.  The PI

17  Courts do not regard the Court's unavailability for timely motion hearings as an "immediate

18  danger" or threat of "irreparable harm" justifying *ex parte* relief.  Instead of seeking *ex parte*

19  relief, the moving party should reserve the earliest available motion hearing date (even if it is

20  after the scheduled trial date) and file a motion to continue trial.  Parties should also check

21  CRS from time to time because earlier hearing dates may become available as cases settle or

22  hearings are taken off calendar.

23  **REQUEST FOR TRANSFER TO INDEPENDENT CALENDAR DEPARTMENT**

24  17.    Parties seeking to transfer a case from a PI Court to an Independent Calendar ("IC")

25  Court shall file and serve the Court's "Motion/Opposition/Stipulation to Transfer Complicated

26  Personal Injury Case to Independent Calendar Court" (form LACIV 238, available on the Court's

27  website under the PI Courts link).  The PI Courts will transfer a matter to an IC Court if the case

28  is not a "Personal Injury" case as defined in this Order, or if it is "complicated."  In determining

2020-SJ-002-00

1   whether a personal injury case is "complicated" the PI Courts will consider, among other things,
2   the number of pretrial hearings or the complexity of issues presented.
3   18.      Parties opposing a motion to transfer have five court days to file an Opposition (using
4   the same LACIV 238 Motion to Transfer form).
5   19.      The PI Courts will not conduct a hearing on any Motion to Transfer to IC Court. Although
6   the parties may stipulate to transfer a case to an Independent Calendar Department, the PI Courts
7   will make an independent determination whether to transfer the case or not.

8   **FINAL STATUS CONFERENCE**
9   20.      Parties shall comply with the requirements of the PI Courts' operative Standing Order
10  Re Final Status Conference, which shall be served with the summons and complaint.

11  **JURY FEES**
12  21.      Parties must pay jury fees no later than 365 calendar days after the filing of the initial
13  complaint (C. C. P. § 631, subd. (c)(2)).

14  **JURY TRIALS**
15  22.      The PI Courts do not conduct jury trials.  On the trial date, a PI Court will contact the
16  Master Calendar Court, Department One, in the Stanley Mosk Courthouse.  Department One
17  will assign cases for trial to dedicated Civil Trial Courtrooms and designated Criminal
18  Courtrooms.

19  **SANCTIONS**
20  23.      The Court has discretion to impose sanctions for any violation of this general order
21  (C.C.P. §§ 128.7, 187 and Gov. Code, § 68608, subd. (b)).

22
23
24  Dated: ___Feb. 24, 2020___
25                                               SAMANTHA P. JESSNER
26                                               Supervising Judge of Civil Courts
27
28

Page 7 of 7

First Amended Standing Order Re Personal Injury Procedures, Spring Street Courthouse

2020-SJ-004-00

**FILED**
Superior Court of California
County of Los Angeles

FEB 24 2020

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Carmen Adona

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| IN RE PERSONAL INJURY CASES ASSIGNED TO THE PERSONAL INJURY COURTS AT THE SPRING STREET COURTHOUSE | THIRD AMENDED STANDING ORDER RE: FINAL STATUS CONFERENCE, PERSONAL INJURY ("PI") COURTS (Effective January 13, 2020) |

The dates for Trial and the Final Status Conference ("FSC") having been set in this matter, the **COURT HEREBY AMENDS AND SUPERSEDES ITS** August 9, 2019 **STANDING ORDER RE: FINAL STATUS CONFERENCE, PERSONAL INJURY ("PI") COURTS AND, GENERALLY ORDERS AS FOLLOWS IN THIS AND ALL OTHER GENERAL JURISDICTION PERSONAL INJURY ACTIONS:**

1. **PURPOSE OF THE FSC**

The purpose of the FSC is to verify that the parties/counsel are completely ready to proceed with trial continuously and efficiently, from day to day, until verdict. The PI Courts will verify at the FSC that all parties/counsel have (1) prepared the Exhibit binders and Trial Document binders and (2) met and conferred in an effort to stipulate to ultimate facts, legal issues, motions in limine, and the authentication and admissibility of exhibits.

///
///
///

Page 1 of 5

2.   **TRIAL DOCUMENTS TO BE FILED**

At least five calendar days prior to the Final Status Conference, the parties/counsel shall serve and file the following Trial Readiness Documents:

A.   **TRIAL BRIEFS (OPTIONAL)**

Each party/counsel may, but is not required to, file a trial brief succinctly identifying:

(1) the claims and defenses subject to litigation;

(2) the major legal issues (with supporting points and authorities);

(3) the relief claimed and calculation of damages sought; and

(4) any other information that may assist the court at trial.

B.   **MOTIONS IN LIMINE**

Before filing motions in limine, the parties/counsel shall comply with the statutory notice provisions of Code of Civil Procedure ("C.C.P.") Section 1005 and the requirements of Los Angeles County Court Rule ("Local Rule") 3.57(a). The caption of each motion in limine shall concisely identify the evidence that the moving party seeks to preclude. Parties filing more than one motion in limine shall number them consecutively. Parties filing opposition and reply papers shall identify the corresponding motion number in the caption of their papers.

C.   **JOINT STATEMENT TO BE READ TO THE JURY**

For jury trials, the parties/counsel shall work together to prepare and file a joint written statement of the case for the court to read to the jury (Local Rule 3.25(g)(4)).

D.   **JOINT WITNESS LIST**

The parties/counsel shall work together to prepare and file a joint list of all witnesses that each party intends to call, excluding impeachment and rebuttal witnesses (Local Rule 3.25(g)(5)). The joint witness list shall identify each witness by name, specify which witnesses are experts, estimate the length of the direct, cross examination and re-direct examination (if any) of each, and include a total of the number of hours for all witness testimony. The parties/counsel shall identify all potential witness scheduling issues and special requirements. Any party/counsel who seeks to elicit testimony from a witness not identified on the witness list must first make a showing of good cause to the trial court.

E.   **LIST OF PROPOSED JURY INSTRUCTIONS**

     **(JOINT AND CONTESTED)**

The parties/counsel shall jointly prepare and file a list of proposed jury instructions, organized in numerical order, specifying the instructions upon which all sides agree and the contested instructions, if any.  The List of Proposed Jury Instructions must include a space by each instruction for the judge to indicate whether the instruction was given.

F.   **JURY INSTRUCTIONS**

     **(JOINT AND CONTESTED)**

The parties/counsel shall prepare a complete set of full-text proposed jury instructions, editing all proposed California Civil Jury Instructions and insert party name(s) and eliminate blanks, brackets, and irrelevant material.  The parties/counsel shall prepare special instructions in a format ready for submission to the jury with the instruction number, title, and text only (i.e., there should be no boxes or other indication on the printed instruction itself as to the requesting party).

G.   **JOINT VERDICT FORM(S)**

The parties/counsel shall prepare and jointly file a proposed general verdict form or special verdict form (with interrogatories) acceptable to all sides (Local Rule 3.25(g)(8)).  If the parties/counsel cannot agree on a joint verdict form, each party must separately file a proposed verdict form.

H.   **JOINT EXHIBIT LIST**

The parties/counsel shall prepare and file a joint exhibit list organized with columns identifying each exhibit and specifying each party's evidentiary objections, if any, to admission of each exhibit.  The parties/counsel shall meet and confer in an effort to resolve objections to the admissibility of each exhibit.

I.   **PAGE AND LINE DESIGNATION FOR**

     **DEPOSITION AND FORMER TESTIMONY**

If the parties/counsel intend to use deposition testimony or former trial testimony in lieu of any witness's live testimony, the parties/counsel shall meet and confer and jointly prepare and file a chart with columns for each of the following:  1) the page and line designations of the deposition or

1  former testimony requested for use, 2) objections, 3) counter-designations, 4) any responses thereto,
2  and 5) the Court's ruling.
3  **3.  EVIDENTIARY EXHIBITS**
4      The parties/counsel shall jointly prepare (and be ready to temporarily lodge for inspection at
5  the FSC) three sets of tabbed, internally paginated by document, and properly-marked exhibits,
6  organized numerically in three-ring binders (a set for the Court, the Judicial Assistant and the
7  witnesses).  The parties/counsel shall mark all non-documentary exhibits and insert a simple written
8  description of the exhibit behind the corresponding numerical tab in the exhibit binder.  If the parties
9  have a joint signed exhibit list and electronic copies of their respective exhibits, then the
10  parties/counsel will not be required to produce exhibit binders at the FSC.  However, the exhibit
11  binders will be required by the assigned trial judge when the trial commences.  In the absence of
12  either a joint signed exhibit list or electronic copies, exhibit binders will be required to be produced
13  by all parties/counsel at the FSC.
14  **4.  TRIAL BINDERS REQUIRED IN THE PI COURTS**
15      The parties/counsel shall jointly prepare (and be ready to temporarily lodge and include the
16  following for inspection at the FSC) the Trial Documents consisting of conformed copies (if
17  available), tabbed and organized into three-ring binders with a table of contents that includes the
18  following:
19      Tab A:     Trial Briefs (Optional)
20      Tab B:     Motions in Limine
21      Tab C:     Joint Statement to Be Read to the Jury
22      Tab D:     Joint Witness List
23      Tab E:     Joint List of Jury Instructions (identifying the agreed upon and contested
24                 instructions)
25      Tab F:     Joint and Contested Jury Instructions
26      Tab G:     Joint and/or Contested Verdict Form(s)
27      Tab H:     Joint Exhibit List
28

THIRD AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS
(Effective January 13, 2020)

Tab I:    Joint Chart of Page and Line Designation(s) for Deposition and
          Former Testimony

Tab J:    Copies of the Current Operative Pleadings (including the operative complaint,
          answer, cross-complaint, if any, and answer to any cross-complaint).

The parties/counsel shall organize motions in limine (tabbed in numerical order) behind Tab B with the opposition papers and reply papers for each motion placed directly behind the moving papers. The parties shall organize proposed jury instructions behind Tab F, with the agreed upon instructions first in order followed by the contested instructions (including special instructions) submitted by each side.

**5.    FAILURE TO COMPLY WITH FSC OBLIGATIONS**

The court has discretion to require any party/counsel who fails or refuses to comply with this Amended Standing Order to Show Cause why the Court should not impose monetary, evidentiary and/or issue sanctions (including the entry of a default or the striking of an answer).

Dated: Feb. 24, 2020

SAMANTHA P. JESSNER
Supervising Judge of Civil Courts

THIRD AMENDED ORDER RE FINAL STATUS CONFERENCE, PERSONAL INJURY COURTS
(Effective January 13, 2020)

FILED
Superior Court of California
County of Los Angeles

DEC 22 2020                    2020-SJ-020-01

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Anoush Mchitarian

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| In re Personal Injury Cases Assigned to the Personal Injury Courts at the Spring Street Courthouse | ) AMENDED SUPPLEMENTAL STANDING<br>) ORDER RE COVID PROTECTIVE<br>) MEASURES RELATED TO FINAL STATUS<br>) CONFERENCES IN PERSONAL INJURY<br>) CASES AT THE SPRING STREET<br>) COURTHOUSE<br>) |

In an effort to reduce the number of in-person appearances in the Personal Injury ("PI") courtrooms located in the Spring Street courthouse and to prevent the transmission of the COVID-19 virus, the court hereby issues this supplemental order to the Third Amended Standing Order re: Final Status Conference Personal Injury Courts dated February 24, 2020 ("Operative PI FSC Order").

1.    **ELECTRONIC TRIAL BINDERS**

As set forth in the Operative PI FSC Order, parties/counsel must file and serve Trial Readiness Documents at least five calendar days prior to the FSC. Instead of providing the court that will be conducting the FSC with the trial binders as described in the Operative PI FSC Order and appearing in person, parties/counsel are ordered to provide the trial binders in electronic form. This will allow parties and attorneys to appear remotely for the final status conference and provide the court with the opportunity to review the trial binders to determine whether the parties/counsel are ready for trial. Hard copies of the binders prepared in accordance with the Operative PI FSC Order will continue to be required for the trial courtroom.

///

Page 1 of 3

AMENDED SUPPLEMENTAL STANDING ORDER RE COVID PROTECTIVE MEASURES RELATED TO
FINAL STATUS CONFERENCES IN PERSONAL INJURY CASES AT THE SPRING STREET COURTHOUSE

2. **REQUIREMENTS OF ELECTRONIC TRIAL BINDERS**

At least <u>two</u> court days before the FSC, parties/counsel must submit via email a joint electronic trial binder to the courtroom conducting the FSC as follows:

a.   The parties/counsel must submit in <u>one</u> PDF the joint statement of the case, joint witness list, joint list of jury instructions, full-text joint and contested jury instructions, joint and/or contested verdict form(s), joint exhibit list, and joint deposition designation chart as listed in paragraph 4 of the Operative PI FSC Order.

b.   The trial briefs and motions in limine, oppositions, and replies, if any, must be submitted in a separate PDF.

c.   The PDFs must be text searchable.

d.   The PDFs must be bookmarked which is essentially an electronic tab so that the FSC judge can easily find and navigate among the trial documents. (See https://helpx.adobe.com/acrobat/using/page-thumbnails-bookmarks-pdfs.html and/or https://support.microsoft.com/en-us/office/ for bookmarking instructions).

e.   The PDFs must be emailed to the applicable email address listed below:
Department 27 at sscdept27FSC@LACourt.org
Department 28 at sscdept28FSC@LACourt.org
Department 29 at sscdept29FSC@LACourt.org
Department 31 at sscdept31FSC@LACourt.org
Department 32 at sscdept32FSC@LACourt.org

f.   The subject line in the email must include identifying case information as follows:

[Insert Case Number] Trial Readiness Binder, FSC, [Insert MM/DD/YEAR of Hearing Date] (e.g. 19STCV00001 Trial Readiness Binder, FSC 01/11/2021).

g.  Each email should have two PDFs attached — one containing the Trial Readiness documents and the other containing the trial briefs and motions in limine, if applicable.

h.  The parties need not submit the evidentiary exhibit binders at the FSC. However, the parties shall prepare the exhibit binders as required in paragraph 5 of the Operative PI FSC Order and be prepared to represent to the court that they have been properly prepared. Hard copies of the exhibit binders will be required for trial.

3.  **FAILURE TO COMPLY WITH FSC OBLIGATIONS**

The court has discretion to require any party/counsel who fails or refuses to comply with this Supplemental Standing Order to show cause why the Court should not impose monetary, evidentiary and/or issue sanctions (including the entry of a default or the striking of an answer). In addition, failure to timely and fully comply with this order may result in the case not being assigned a trial courtroom by Dept. 1.

Dated: DEC 2 2 2020

_Samantha P. Jessner_

Samantha P. Jessner
Supervising Judge, Civil
Los Angeles Superior Court

Page 3 of 3

AMENDED SUPPLEMENTAL STANDING ORDER RE COVID PROTECTIVE MEASURES RELATED TO
FINAL STATUS CONFERENCES IN PERSONAL INJURY CASES AT THE SPRING STREET COURTHOUSE

**FILED** 2021-SJ-008-00
Superior Court of California
County of Los Angeles

**JUN 23 2021**

Sherri R Carter Executive Officer/Clerk
By_____ Deputy
Lorena Albine

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE PERSONAL INJURY CASES ASSIGNED TO PERSONAL INJURY COURTROOMS AT THE SPRING STREET COURTHOUSE | ) ) ) ) ) ) ) ) ) ) |

SIXTH AMENDED STANDING ORDER RE: MANDATORY SETTLEMENT CONFERENCE
(Effective June 21, 2021)

TO EACH PARTY AND TO THE ATTORNEY OF RECORD FOR EACH PARTY:

Pursuant to California Code of Civil Procedure, the California Rules of Court and the Los Angeles Court Rules, the Los Angeles Superior Court (Court) HEREBY AMENDS AND SUPERSEDES THE FEBRUARY 24, 2020 FIFTH AMENDED STANDING ORDER, AND THE COURT HEREBY ISSUES THE FOLLOWING SIXTH AMENDED STANDING ORDER:

The Court orders the parties to participate in a virtual Mandatory Settlement Conference (MSC) supervised by a judge and staffed by volunteer attorneys who have significant experience in handling these types of cases and are members of the American Board of Trial Advocates, the Association of Southern California Defense Counsel, the Consumer Attorneys Association of Los Angeles, and or the Beverly Hills Bar Association, and have continuing professional interest as officers of the court in its successful operation.

1. Plaintiff's counsel shall within two (2) court days of the Court's Order of an MSC access the ResolveLawLA website at www.resolvelawla.com to create an account and register the case for MSC. Plaintiff's counsel must coordinate with defense counsel and select a mutually agreed upon date and time for the MSC prior to the trial date. Plaintiff's counsel shall also provide the name, email address, and phone number for defense counsel when registering the case for an MSC.

2021-SJ-008-00

2. A mandatory settlement conference statement shall be lodged by each party with the ResolveLawLA website and served on all parties not less than five (5) court days before the scheduled MSC. The settlement conference statement shall be limited to five (5) pages on the MSC Brief and ten (10) pages for exhibits. ResolveLawLA MSCs are available at 9 a.m. and 1:30 p.m. Monday through Friday, excluding court holidays, and are conducted via Zoom.

3. Pursuant to California Rules of Court, Rule 3.1380(b) and Los Angeles Superior Court Rule 3.25(d), trial counsel, the parties and persons with full authority to settle the case (including insurance company representatives) must attend virtually via the website unless a judge has excused the virtual appearance for good cause. Once defense counsel is notified that the matter has been scheduled for a remote MSC, defense counsel shall create their own login to the resolvelawla.com system, and shall list all parties, party representatives and insurance adjusters' names, phone numbers, and emails where indicated. In the event the MSC needs to be canceled, it must be canceled through the ResolveLawLA system.

4. If the case settles prior to the scheduled MSC, Plaintiff's counsel shall forthwith notify the courtroom to which the case is assigned of such settlement. The parties should also document their settlement agreement in a writing signed by all parties. Upon receiving notification, the ResolveLawLA system will send notifications via text and/or email and will include a Zoom link for counsel, the parties, and insurance representatives to join the remote MSC.

5. The Court has the discretion to require any party and/or counsel who fails or refuses to comply with this order, to show cause why the Court should not impose monetary sanctions.

IT IS SO ORDERED.

Dated: 6/23/21

Judge David J. Cowan
Supervising Judge, Civil Division

STANDING ORDER – Sixth Amended Standing Order
re MSC In Re PI Cases Assigned to PI Courtrooms at Spring Street Courthouse

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association
Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

    h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

    i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.    The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
        (INSERT DATE)                        (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.    The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.    References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____
      (TYPE OR PRINT NAME)

Date:

_____
      (TYPE OR PRINT NAME)

Date:

_____
      (TYPE OR PRINT NAME)

Date:

_____
      (TYPE OR PRINT NAME)

Date:

_____
      (TYPE OR PRINT NAME)

Date:

_____
      (TYPE OR PRINT NAME)

> _____
      (ATTORNEY FOR PLAINTIFF)

> _____
      (ATTORNEY FOR DEFENDANT)

> _____
      (ATTORNEY FOR DEFENDANT)

> _____
      (ATTORNEY FOR DEFENDANT)

> _____
      (ATTORNEY FOR _____)

> _____
      (ATTORNEY FOR _____)

> _____
      (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE. | CASE NUMBER |
|---|---|
|  |  |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE | CASE NUMBER |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____ )

➤ _____
(ATTORNEY FOR _____ )

➤ _____
(ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐     Request for Informal Discovery Conference
   ☐     Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: | | |
| E-MAIL ADDRESS (Optional): FAX NO. (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE | CASE NUMBER |
|---|---|
|  |  |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____ )

➤ _____
(ATTORNEY FOR _____ )

➤ _____
(ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

**FILED**
LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK

BY NANCY NAVARRO, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| General Order Re<br>Use of Voluntary Efficient Litigation<br>Stipulations<br><br>_____ | ) ORDER PURSUANT TO CCP 1054(a),<br>) EXTENDING TIME TO RESPOND BY<br>) 30 DAYS WHEN PARTIES AGREE<br>) TO EARLY ORGANIZATIONAL<br>) MEETING STIPULATION<br>)<br>) |

Whereas the Los Angeles Superior Court and the Executive Committee of the Litigation Section of the Los Angeles County Bar Association have cooperated in drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los Angeles County Bar Association Labor and Employment Law Section; the Consumer Attorneys Association of Los Angeles; the Association of Southern California Defense Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California Employment Lawyers Association all "endorse the goal of promoting efficiency in litigation, and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation. This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

1  by Code of Civil Procedure section 1054(a) without further need of a specific court

2  order.

4  DATED: _May 11, 2011_                _Carolyn B. Kuhl_

                                        Carolyn B. Kuhl, Supervising Judge of the
                                        Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

 **Superior Court of California, County of Los Angeles**

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control (with the parties):** Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

## How to Arrange Mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
   - **JAMS, Inc.** Assistant Manager Reggie Joseph, RJoseph@jamsadr.com (310) 309-6209
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

These organizations cannot accept every case and they may decline cases at their discretion. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

To keep others from seeing what you entered on your form, please press the Clear This Form button at the end of this form when finished.

Electronically FILED by Superior Court of California, County of Los Angeles on 11/10/2021 06:20 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Marina Golden v. Sanofi-Aventis U.S., LLC, et al. | 21STCV41533 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I.  Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES    CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 5-7    ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked.
For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br><br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☑ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort  (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

CIV 109 03-04 (Rev. 03/06)  
LASC Approved  
**CIVIL CASE COVER SHEET ADDENDUM**  
**AND STATEMENT OF LOCATION**  
LASC, rule 2.0  
Page 1 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Marina Golden v. Sanofi-Aventis U.S., LLC, et al. | |

| | **A**<br>Civil Case Cover<br>Sheet Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont d.)** | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108   Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Marina Golden v. Sanofi-Aventis U.S., LLC, et al. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br>(02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152   Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153   Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review<br>(39) | ☐ A6150   Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003   Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007   Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006   Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035   Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental  (30) | ☐ A6036   Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014   Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br>(20) | ☐ A6141   Sister State Judgment | 2., 9. |
| | | ☐ A6160   Abstract of Judgment | 2., 6. |
| | | ☐ A6107   Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140   Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114   Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112   Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033   Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030   Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040   Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011   Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000   Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113   Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121   Civil Harassment | 2., 3., 9. |
| | | ☐ A6123   Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124   Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190   Election Contest | 2. |
| | | ☐ A6110   Petition for Change of Name | 2., 7. |
| | | ☐ A6170   Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100   Other Civil Petition | 2., 9. |

| SHORT TITLE:<br>Marina Golden v. Sanofi-Aventis U.S., LLC, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C<br>WHICH APPLIES IN THIS CASE<br><br>☐1. ☐2. ☐3. ☑4. ☐5. ☐6. ☐7. ☐8. ☑9. ☐10. | ADDRESS: |
|---|---|
| CITY:      STATE:      ZIP CODE: | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Los Angeles Superior Court  (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: November 9, 2021

*Azar Mouzari*
(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LASC Approved CIV 109 03-04 (Rev. 03/06).

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form 982(a)(27), if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| Print This Form | To protect your privacy, please press the Clear This Form button after you have printed this form. | Clear This Form |
|---|---|---|

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Electronically FILED by Superior Court of California, County of Los Angeles on 11/10/2021 06:20 PM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez, Deputy Clerk

Case 2:22-cv-05296 Document 1-1 Filed 07/29/22 Page 74 of 78 Page ID #:86

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Azar Mouzari, Esq. (State Bar No. 263461)<br>Beverly Hills Trial Attorneys, P.C.<br>468 N. Camden Drive, Suite 238 Beverly Hills, CA 90210<br>TELEPHONE NO.: 310-858-5567    FAX NO. *(Optional):* 424-846-0963<br>ATTORNEY FOR *(Name):* Marina Golden | *FOR COURT USE ONLY* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Marina Golden v. Sanofi-Aventis U.S., LLC, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000) | [ ] **Limited** (Amount demanded is $25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 21STCV41533 |
| | | | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[x] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [x] punitive
4. Number of causes of action *(specify):* 6
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 9, 2021

Azar Mouzari
_____
(TYPE OR PRINT NAME)

*Azar Mouzari*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

privacy, please press the Clear This Form button after yo

Print this form | Save this form | Clear this form

# CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Case Number:** 21STCV41533
MARINA GOLDEN VS SANOFI-AVENTIS U.S., LLC, ET AL.

**Filing Courthouse:** Spring Street Courthouse

**Filing Date:** 11/10/2021
**Case Type:** Product Liability (not asbestos or toxic/environmental) (General Jurisdiction)
**Status:** Pending

Click here to access document images for this case

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page

# FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**04/26/2023** at 10:00 AM in Department 29 at 312 North Spring Street, Los Angeles, CA 90012
Final Status Conference

**05/10/2023** at 08:30 AM in Department 29 at 312 North Spring Street, Los Angeles, CA 90012
Non-Jury Trial

**11/06/2024** at 08:30 AM in Department 29 at 312 North Spring Street, Los Angeles, CA 90012
Order to Show Cause Re: Dismissal

# PARTY INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

ALBERTSONS COMPANIES INC. - Defendant

AXMINSTER MEDICAL GROUP INC. - Defendant

BOEHRINGER INGELHEIM PHARMACEUTICALS INC. - Defendant

CVS PHARMACY INC. - Defendant

GLAXOSMITHKLINE LLC - Defendant

GOLDEN MARINA - Plaintiff

MOUZARI AZAR - Attorney for Plaintiff

PFIZER INC. - Defendant

RITE AID CORPORATION - Defendant

SANOFI-AVENTIS U.S. LLC - Defendant

THE KROGER CO. - Defendant

WALGREEN CO. - Defendant

WALMART INC. - Defendant

## DOCUMENTS FILED

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Documents Filed (Filing dates listed in descending order)

**07/07/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Service by Substituted Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**11/24/2021** Certificate of Mailing for ([PI General Order], Standing Order re PI Procedures and Hearing Dates)
Filed by Clerk

**11/24/2021** PI General Order
Filed by Clerk

**11/17/2021** Summons (on Complaint)
Filed by Marina Golden (Plaintiff)

**11/10/2021** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

**11/10/2021** Civil Case Cover Sheet
Filed by Marina Golden (Plaintiff)

**11/10/2021** Civil Case Cover Sheet
Filed by Marina Golden (Plaintiff)

**11/10/2021** Complaint
Filed by Marina Golden (Plaintiff)

## PROCEEDINGS HELD

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

**Proceedings Held (Proceeding dates listed in descending order)**

None

## REGISTER OF ACTIONS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION | Documents Filed | Proceedings Held

### Register of Actions (Listed in descending order)

**07/07/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Service by Substituted Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**07/06/2022** Proof of Personal Service
Filed by Marina Golden (Plaintiff)

**11/24/2021** Certificate of Mailing for ([PI General Order], Standing Order re PI Procedures and Hearing Dates)
Filed by Clerk

**11/24/2021** PI General Order
Filed by Clerk

**11/17/2021** Summons (on Complaint)
Filed by Marina Golden (Plaintiff)

**11/10/2021** Complaint
Filed by Marina Golden (Plaintiff)

**11/10/2021** Notice of Case Assignment - Unlimited Civil Case
Filed by Clerk

**11/10/2021** Civil Case Cover Sheet
Filed by Marina Golden (Plaintiff)

**11/10/2021** Civil Case Cover Sheet
Filed by Marina Golden (Plaintiff)